UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| In re: LORI J. GRIMMETT, | Bk. Case No. 1:16-01094-JDP |
| Debtor, | |
| Weekes Law, PLLC, | Case No. 1:17-cv-00266-EJL |
| Appellant, vs. | **ORDER** |
| GAIL BREHM GEIGER, Acting United States Trustee for Region 18, Appellee | |
| Appellees. | |

**INTRODUCTION**

Pending before the Court in the above-entitled matter is Appellant's appeal from United States Bankruptcy Judge Jim D. Pappas' decision: (1) cancelling a fee agreement between a bankruptcy debtor and her counsel and (2) directing counsel to disgorge all fees paid by the debtor. (Dkts. 1-3, 1-4.) The matter is ripe for the Court's review. Having fully reviewed the record, the Court finds that the facts and legal arguments are adequately presented in the briefs and record. Accordingly, in the interest of avoiding further delay, and because the court conclusively finds that the decisional process would not be significantly aided by oral argument, this matter is decided on the record before this Court without oral argument.

ORDER- 1

As discussed more fully below, the Court affirms the Bankruptcy Court's decision. Essentially, Appellant forfeited any right to professional fees by failing to provide reasonable legal services consistent with the bankruptcy code, bankruptcy rules, court orders, and local rules. These failures include both acts of omission and commission. Appellant failed to provide all of the legal services required consistent with the bankruptcy code, rules, and local rules. In addition, Appellant engaged in aggressive debt collection practices that are contrary to the letter and spirit of these same rules.

## FACTUAL BACKGROUND

The Court adopts the factual background outlined in the Fees Decision, which is undisputed. Nonetheless, in brief and for context, the following facts are undisputed.

**1.      Bankruptcy Proceedings Before Debtor Contacted the Bankruptcy Judge.**

On July 27, 2016, Lori J. Grimmett ("Debtor") signed a contract titled "Chapter 7 Agreement & Promissory Note" (the "Fee Agreement") with Nolan R. Sorensen and Weekes Law, PLLC (collectively "Counsel"). (B. Dkt. 24, p. 6.)[1] On August 24, 2016, Debtor filed a bare-bones bankruptcy petition signed by Nolan Sorenson, an attorney with Weekes Law, LLC. (B. Dkt. 1; Dkt. 24, p. 6.)[2] The Petition was filed without any of the required schedules, Statement of Financial Affairs, statement of current monthly income, or other required documents. (Dkt. 1-3, pp. 2-3.)

---

[1] References to the bankruptcy docket are specifically designated as "B. Dkt." All other docket references relate to the above-captioned appeal from the bankruptcy court.

[2] Appellant Weeks Law, PLLC, now does business under the name Capstone Law, LLC. (Dkt. 11.)

ORDER- 2

Also on August 24, 2016, Debtor filed an application to pay the case fee in two installments. (B. Dkt. 5.) The next day, the Bankruptcy Court entered an Order Granting Application to Pay Fees in Installments ("Installment Fee Payment Order"). (B. Dkt. 10.)

On September 7, 2016, Debtor filed the remaining schedules and documents and Counsel filed a Rule 2016(b) disclosure of compensation. (B. Dkts. 16-20.) Just over two weeks later, on September 23, 2016, Debtor, through Counsel, paid her first filing fee installment. (B. Dkt. 21.) She paid $200.00 toward the filing fee. *Id.*

On September 29, 2016, Debtor attended the Section 341(1) meeting of creditors with Counsel. (B. Dkt. 22.) No creditors attended the meeting. *Id.* Shortly thereafter, on October 2, 2016, Debtor attended a required personal financial management course. (B. Dkt. 23.)

At that point in the proceedings, it would appear that the only obstacle between Debtor and discharge was the second filing fee installment payment, which was due on October 28, 2016. (Dkt. 11, p. 11.) However, Debtor sent a letter to the Court dated October 28, 2016. (B. Dkts. 24, 25.) The letter outlines Debtor's concerns about collection notices she had received from Counsel between September 15, 2016 and October 28, 2016. (B. Dkts. 24, 25, 31.) In addition, the letter attached Debtor's Fee Agreement with Counsel. (B. Dkt. 24, pp. 6-10.)

**2.    Fee Agreement**

In the Fee Agreement, Counsel essentially charges a $2,000.00 flat fee to handle Debtor's bankruptcy. *Id.* The Fee Agreement divides the legal services to be provided by Counsel into pre-petition services and post-petition services. *Id.* Debtor agreed to pay a

ORDER- 3

$500.00 fee for certain, defined pre-petition services and $1,500.00 for certain, defined post-petition services. *Id.*

According to the Fee Agreement, certain costs; i.e., the court filing fee, credit counseling and debtor education courses, would be covered by the $2,000.00 flat fee. *Id.* Any additional costs or legal services that were not covered by the definitions of pre-petition and post-petition services would be Debtor's responsibility. *Id.*

Pursuant to the Fee Agreement, after the initial $500.00 fee for pre-petition services was paid, Counsel would file the Petition. *Id.* In addition, Debtor agreed to begin making regular payments of $250.00 toward the remaining $1,500.00 balance for the post-petition legal services beginning three weeks after filing the Petition was filed and every four weeks thereafter. *Id.* If any fee payment was missed, Debtor agreed to certain consequences, including the following:

- She will be charged a late fee of $100;

- The entire balance due under the agreement would become due;

- Counsel would charge a 36% interest rate on the unpaid balance until paid in full;

- Her filing fee might not be paid to the Court;

- Her case could be dismissed without a discharge;

- Counsel would seek court approval to withdraw from her representation;

- Counsel would bring a collection action against her; and

- Counsel would be entitled to recover reasonable attorneys fees, costs, and expenses associated with enforcing the Fee Agreement.

*Id.*

ORDER- 4

**3.      Counsel's Debt Collection Efforts During Bankruptcy Proceedings.**

After making the initial $500.00 payment, Debtor stopped making payments to Counsel. Counsel responded by sending Debtor at least six email communications and one letter between September 15 and October 28, 2016. (Dkts. 24, 31.)

On September 15, 2016; September 19, 2016; September 21, 2016; and October 18, 2016, Counsel sent Debtor emails simply stating that Debtor's scheduled payment had been declined and a $25.00 returned check fee had been applied to the outstanding balance on the account. (*Id.* at pp. 3-6.) However, in a letter dated September 17, 2016, Counsel stated that if Debtor did not bring her account current within 14 days, Counsel would "withdraw from your case and refer[] the outstanding balance for collection, including without limitation, seeking a garnishment from you." (*Id.* at p. 8.) Counsel also stated, "if we withdraw from your case and you fail to complete any remaining issues in your case, your case may be dismissed and you will have to start all over -- even if the discharge has already been granted." (*Id.*)

It appears this letter was attached to a fifth email dated October 25, 2016. (*Id.* at p. 7.) In addition, in a sixth email dated October 28, 2016, Counsel stated that Debtor's failure to make monthly fee payments "can have serious consequences, including, without limitation: (1) dismissal of your case; (2) default interest; and (3) collections." (Dkt. 24.)

**4.      Bankruptcy Proceedings After Debtor Contacted the Bankruptcy Judge.**

On November 7, 2016, the Court docketed Debtor's letter. (*Id.*) A little over a week later, on November 16, 2016, the United States Trustee ("UST") filed a "Motion for Entry

of an Order Cancelling Fee Agreements and Directing Weekes Law, PLLC and Nolan Sorensen to Return Fees." ("UST Motion Re Fees.") (B. Dkt. 26.)

Shortly thereafter, on November 21, 2016, Counsel filed an amended Rule 2016(b) disclosure of compensation. (B. Dkt. 28.) On December 16, 2016, Debtor herself paid her second and final filing fee installment payment of $135.00 directly to the Court. (B. Dkt. 72, p. 22.)

On December 20, 2016, Counsel filed an Objection to the UST's Motion Re Fees. (B. Dkt. 29.) The Court held an initial hearing on January 4, 2017, and determined an evidentiary hearing would be necessary. (B. Dkts. 37, 38, 71.) Two days later, on January 6, 2017, the Court entered an Order Discharging Debtor. (B. Dkt. 39.)

On March 3, 3017, Counsel filed a second brief in opposition to the UST's Motion Re Fees (B. Dkt. 49) and, on March 8, 2017, the Court held an evidentiary hearing on the fee issue (B. Dkts. 51, 72). Attorney Nolan Sorensen testified at the hearing. *Id.*

On March 31, 2017, nearly a month after the hearing, Counsel filed a second amended Rule 2016(b) disclosure of compensation. (B. Dkt. 31.) Thus, there were a total of three written disclosures filed in addition to the testimony offered through Counsel at the hearing. (B. Dkts. 18; 28; 31; and 72, pp. 18- 26, 40.)

On June 5, 2017, the Court issued a Memorandum of Decision explaining its reasoning for cancelling the Fee Agreement between Counsel and Debtor and directing Counsel to disgorge all fees paid by Debtor ("Fees Decision"). (B. Dkt. 58.) On that same date, the Court also issued an Order Granting the United States Trustee's Motion to Cancel Agreement and Disgorge Fees ("Fees Order"). (B. Dkt. 59.)

ORDER- 6

In the Fees Decision, the Court found that each of Counsel's original and amended disclosure statements contained incorrect information. (Dkt. 1-3, p. 32.) The Court cancelled the Fee Agreement and directed Counsel to disgorge any fees retained from Debtor's $500.00 payment for the following reasons: (1) the Fee Agreement allowed Counsel to unbundle services; (2) Counsel had no right to post-petition fees absent *quantum meruit* and offered insufficient evidence to identify and establish the value of services actually provided; (3) the Fee Agreement creates conflicts of interest between Counsel and Debtor; (4) the Rule 2016(a) disclosures were false; (5) Counsel tried to collect fees in violation of the Court's Installment Fee Payment Order; and (6) Counsel failed to obtain wet signatures on verified documents filed with the Bankruptcy Court. *Id.*

On June 16, 2017, Counsel filed a timely notice of appeal from the Fees Order to the United States District Court for the District of Idaho. (Dkt. 63.) Responsive briefs have been filed and the matter is now ripe for decision.

## STANDARD OF REVIEW

This Court has jurisdiction to entertain an appeal from the Bankruptcy Court under 28 U.S.C. § 158(a), which provides: "The district courts of the United States shall have jurisdiction to hear appeals. . . from final judgments, orders, and decrees[] of bankruptcy judges[.]" On appeal, the Bankruptcy Court's conclusions of law are reviewed *de novo* and the factual findings for clear error. *In re Greene*, 583 F.3d 614, 618 (9th Cir. 2009) (citation omitted); Fed. R. Bankr. P. 8013 ("Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses.")

ORDER- 7

The Bankruptcy Court's Fees Order is a final order for purposes of appeal. *In re Lewis*, 113 F.3d 1040, 1043-44 (9th Cir. 2007). The Bankruptcy Court had jurisdiction to enter the final order pursuant to 28 U.S.C. § 157(a), 157(b)(1), and 1334.

The Bankruptcy Court entered the Fees Order pursuant to 11 U.S.C. § 329(b). The Bankruptcy Court also had discretion to sanction Counsel: (1) under Rule 9011(c) for violations of Rule 9011(b) and (2) consistent with its inherent authority to sanction litigants or their counsel for intentional rules violations. *See In re Deville*, 361 F.3d 539, 548-49 (9th Cir. 2004.)

The Bankruptcy Court has broad, "inherent authority over the debtor's attorney's compensation." *In re Lewis*, 113 F.3d at 1045. This includes the authority to deny attorney's fees completely. *Id.* The Ninth Circuit has described this inherent authority as follows:

> The Bankruptcy Code contains a number of provisions (e.g., §§ 327, 329, 330, 331) designed to protect the debtor from the debtor's attorney. *See, e.g., In re Walters,* 868 F.2d 665, 668 (4th Cir.1989) (noting that § 329 and Rule 2017 are designed to protect the creditors and the debtor against overreaching by attorney). As a result, several courts have recognized that the bankruptcy court has broad and inherent authority to deny any and all compensation when an attorney fails to meet the requirements of these provisions. *See, e.g., In re Downs,* 103 F.3d 472, 479 (6th Cir. 1996) ("[T]he bankruptcy court should deny all compensation to an attorney who exhibits a willful disregard of his fiduciary obligations to fully disclose the nature and circumstances of his fee arrangement under § 329 and Rule 2016. The authority to do so is inherent, and in the face of such infractions should be wielded forcefully."); *Matter of Prudhomme,* 43 F.3d 1000, 1003 (5th Cir.1995) ("Additionally, the court's broad discretion in awarding and denying fees paid in connection with bankruptcy proceedings empowers the bankruptcy court to order disgorgement as a

sanction to debtors' counsel for nondisclosure."); *In re Chapel Gate Apartments, Ltd.,* 64 B.R. 569, 575 (Bankr. N.D. Tex. 1986) ("Indeed, a failure of counsel to obey the mandate of § 329 and Rule 2016 concerning disclosure, and by implication review by the Court, is a basis for entry of an order denying compensation and requiring the return of sums already paid.").

*Id.*

The Court reviews a Bankruptcy Court's decision regarding attorneys' fees under an abuse of discretion standard. *See In re Lewis*, 113 F.3d at 1043. Moreover, the district court may affirm the bankruptcy court's decision on any ground supported by the record, whether or not the bankruptcy court relied on it. *Muniz v. United Parcel Service, Inc.,* 738 F.3d 214, 219 (9th Cir. 2013).

## ANALYSIS

The Bankruptcy Court has a duty, as well as considerable discretion, in evaluating the reasonableness of fees charged in bankruptcy proceedings. In this case, the Bankruptcy Court did not abuse its discretion when it disallowed any attorneys' fees for Counsel. No amount of compensation would be reasonable given that: (1) Counsel filed inaccurate Rule 2016(a) disclosures; (2) Counsel sought compensation between filing fee installment payments; (3) Counsel failed to obtain Debtor's written signatures on verified documents filed with the court; and (4) both the Fee Agreement and Counsel's aggressive debt collection practices *in the midst of these bankruptcy proceedings* threatened to unbundle legal services and created conflicts of interest between Counsel and Debtor. Moreover, even after the amount of the fee was put at issue, Counsel failed to meet its burden to identify and establish the value of the services actually provided and when.

ORDER- 9

1.      **The Bankruptcy Court's Discretion under 11 U.S.C. § 329(b).**

The UST's Motion Re Fees was brought pursuant to 11 U.S.C. § 329(b). Pursuant to Section 329, the Bankruptcy Court is charged with monitoring a debtor's transactions with attorneys in every bankruptcy case. *See In re Castorena*, 270 B.R. 504, 515 (Bankr. D. Idaho 2001). Counsel for debtors bear the burden of justifying their compensation. *Id.*

There are two components to Section 329. First, every attorney representing a debtor within a year prior to the bankruptcy filing, whether or not applying for compensation, must file a specific statement of compensation paid or agreed to be paid in connection with a bankruptcy case. Section 329(a) states:

> Any attorney representing a debtor in a case under this title, or in connection with such a case, whether or not such attorney applies for compensation under this title, shall file with the court a statement of the compensation paid or agreed to be paid, if such payment or agreement was made after one year before the date of the filing of the petition, for services rendered or to be rendered in contemplation of or in connection with the case by such attorney, and the source of such compensation.

11 U.S.C. § 329(a).

Second, the Bankruptcy Court must determine whether the compensation paid and disclosed is reasonable and, if not, the court has the discretion to do exactly what the court did here: cancel the agreement and direct counsel to disgorge its fee. "If such compensation exceeds the reasonable value of any such services, the court may cancel any such agreement, or order the return of any such payment, to the extent excessive to-- (1) the estate . . . or (2) the entity that made such payment." 11 U.S.C. § 329(b).

ORDER- 10

The reason behind the rule requiring judicial review of attorney payments is "[p]ayments to a debtor's attorney provide serious potential for evasion of creditor protection provisions of the bankruptcy laws, *and serious potential for overreaching by the debtor's attorney.*" S.Rep. No. 95-989 at 39 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5825 (emphasis added). Thus, payments to debtors' attorneys "should be subject to careful scrutiny." *Id.*

In this case, the UST and bankruptcy judge took issue both with the quality of the 2016(b) disclosures as well as the quality of the legal services Counsel provided to Debtor in the bankruptcy proceedings. Both are appropriate considerations.

### A.    *The Court May Disallow Fees If Counsel's Disclosures Are Inaccurate.*

"The disclosure requirements imposed by § 329 are mandatory, not permissive, and an attorney who fails to comply with the disclosure requirements *forfeits any right to receive compensation.*" *In re Byrne,* 152 F.3d 924 (9th Cir.1998) (emphasis in original). The procedure for filing the disclosure required by Section 329 is specified in Rule 2016, which states in relevant part:

> (b) *Disclosure of compensation paid or promised to attorney for debtor.* Every attorney for a debtor, whether or not the attorney applies for compensation, shall file and transmit to the United States trustee within 14 days after the order for relief, or at another time as the court may direct, the statement required by § 329 of the Code.

Fed. R. Bankr. P. 2016(b).

The "failure to timely file an adequate disclosure form alone constitutes a sufficient reason for the Court to reduce, or even completely deny, compensation to the debtor's

attorney." *In re Combe Farms, Inc.,* 257 B.R. 48, 53 (Bankr. D. Idaho 2001). The reason behind the rule is that the Court cannot fulfill its duty under Section 329(b) without a sufficient disclosure form.

### B.    The Court May Disallow Fees if Counsel's Services Lack Value.

In assessing the reasonable value of the services rendered by an attorney to a debtor, the Court should consider the same criteria set forth for determining the proper amount of compensation for estate professionals under 11 U.S.C. § 330(a). *In re Jastrem,* 253 F.3d 438, 443 (9th Cir. 2001). Section 330(a)(3) directs the Court to consider "the nature, extent, and value of the services rendered, taking into consideration all relevant factors, including the time spent and the rates charged for the services, as well as the customary compensation of comparably skilled attorneys in other cases." *Id.*

An important purpose of Section 329 is to ensure that attorneys provide competent representation to debtors. *See In re Dean*, 401 B.R. 917, 923 (Bankr. D. Idaho 2008) (citing *In re Grant,* 14 B.R. 567, 569 (Bankr. S.D.N.Y. 1981)). "If a bankruptcy court finds that an attorney fails to competently perform his or her duties, an order requiring the attorney to disgorge fees pursuant to § 329(b) is proper." *Id.* (citing *In re Wilson,* 11 B.R. 986, 991 (Bankr. S.D.N.Y. 1981)).

In other words, in considering the "value" of the services Counsel provided to Debtor, the Bankruptcy Court may also consider the quality of those services. This is consistent with the Bankruptcy Court's discretion under Section 329. Moreover, it is also consistent with the Bankruptcy Court's "inherent power to sanction vexatious conduct

presented before the court." *Hale v. U.S. Trustee*, 509 F.3d 1139, 1148 (9th Cir. 2007). Finally, it is consistent with counsel's duty to provide competent legal services.

The Idaho Rules of Professional Conduct apply to attorneys practicing in the United States Bankruptcy Court for the District of Idaho. The Local Bankruptcy Rules expressly provide that "members of the bar of this court shall adhere to the Rules of Professional Conduct ("IRPC") promulgated and adopted by the Supreme Court of the State of Idaho." *See* L.B.R. 9010.1. The first rule of the Idaho Rules of Professional Conduct is: "[a] lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation." I.R.C.P. 1.1.

In short, the Bankruptcy Court acted within its discretion in considering the quality of legal services provided in determining the reasonableness of the fee. By failing to provide legal services consistent with the bankruptcy code, rules, and local rules, Counsel fails to provide competent representation to Debtor.

**2.     The Bankruptcy Court's Fees Decision and Fees Order Are Supported by the Facts in the Record.**

In this case, the Bankruptcy Court appropriately determined that Counsel's fee should be disgorged. This decision rests on four separate findings.

      *A.     Counsel's Attorney Compensation Disclosures Were Inaccurate.*

In this case, Counsel concedes that the Rule 2016(b) disclosures were inaccurate. Further, Counsel filed three different Rule 2016(b) disclosures none of which were consistent with his testimony at the evidentiary hearing on the attorneys fee issue.

ORDER- 13

All three written disclosures state that Counsel agreed to accept a total of $1,607.00 for legal services. (B. Dkts. 18, 28, 57.) Apparently, this reflects the combined $2,000 flat fee from the Fee Agreement subtracted by the projected costs of the filing fee and costs associated with the required credit counseling and debtor education courses. However, the record is virtually silent as to the actual costs incurred in this case. There are no receipts, invoices, or any accounting records from Counsel to indicate how Debtor's $500.00 payment was maintained or applied in these proceedings. That is a significant problem.

It is undisputed that Debtor paid $500.00 in two $250.00 payments made in August and *before* the Petition was filed. (Dkt. 72, pp. 13-14.) Ultimately, it would appear that this amount was used to cover the costs of the first filing fee installment payment, credit counseling and debtor education courses. However, the record is unclear as to the actual costs incurred. Further, it appears that the second installment fee of $135 was paid directly to the court from the Debtor in December 2016. (Dkt. 72, p. 22.)

Counsel's disclosures do not clear up the confusion. The September 7, 2016 statement states that $107.00 had been paid in compensation. (B. Dkt. 18.) Assuming the total costs were $393.00, this amount seems to reflect that Counsel anticipated using Debtor's initial payment for services to cover the filing fee and other costs and Counsel would retain the rest.

However, Counsel filed a second compensation statement on November 21, 2016. (B. Dkt. 28.) This statement states that $307.00 was paid in compensation. It is unclear why $200.00 was added to the compensation statement though it seems it must be connected to the filing fee issue.

ORDER- 14

The third compensation statement, received after the hearing on this matter, is dated March 31, 2017. (B. Dkt. 57.) It seems to reflect the fact that the Debtor paid the second filing fee installment payment of $135.00, thus increasing Counsel's fee from $107.00 to $242.00.

The fundamental problem here is that Counsel has not provided a sufficient record or adequate explanation for the multiple disclosures that it concedes were inaccurate. The Court is left guessing as to what Counsel intended with its disclosures and there is no record to support what costs were actually incurred, when, and by whom. These fundamental failures justify total disgorgement of the fee in this case.

Counsel contends that the Bankruptcy Court erred by relying on Counsel's inaccurate Rule 2016(b) disclosures as a basis for total disallowance of compensation. Counsel makes the following three arguments in support of this contention: (1) the inaccuracies in Counsel's disclosure statements were *de minimus*; (2) the Bankruptcy Court did not find that Counsel's fee was unreasonable; and (3) the Bankruptcy Court lacks authority to cancel an agreement that obligates the Debtor to pay from non-estate funds. (Dkt. 11, pp. 20-25.) As discussed below, none of these arguments is persuasive.

First, assuming *arguendo* the inaccuracies in Counsel's disclosure statement were *de minimus*, the Court does not lack authority to order disgorgement. Counsel has the burden of establishing the basis for its fee and the Court provided Counsel with multiple opportunities to explain the amount of compensation it expected to receive. Counsel even had 90 days between the date of the initial hearing and the evidentiary hearing in this case to get the disclosures and the information behind the disclosures right. Counsel failed to do

ORDER- 15

so and filed a third disclosure after the hearing. This disregard for: (1) the process, (2) the Court's need for accurate information, and (3) everyone's time supports the Court's disgorgement decision. Neither Counsel's state of mind nor the magnitude of the errors outweigh these fundamental failures.

Second, contrary to Counsel's argument on appeal, the Bankruptcy Court did find Counsel's fee was unreasonable. This determination was based on the quality of the services provided as well as Counsel's failure to demonstrate the fee was reasonable in light of actual effort expended. This was appropriate even if the flat fee, on its own, was otherwise reasonable. *See In re Lewis*, 113 F.3d at 1045.

Third, again contrary to Counsel's argument on appeal, the Bankruptcy Court has authority to cancel an agreement that obligates the Debtor to pay from non-estate funds. By its plain terms, Section 329(b) authorizes the court to order the return of excessive payments to the estate or to "the entity that made such payment." 11 U.S.C. § 329(b). There is no exception for payments made by the debtor and no logical reason to exclude them from such review. Further, the Ninth Circuit has explicitly held that the bankruptcy court "may order the disgorgement of any payment made to an attorney representing the debtor in connection with a bankruptcy proceeding, irrespective of the payments source." *In re Lewis*, 113 F.3d at 1046. It simply makes no difference whether Counsel seeks to collect directly from the debtor or from the estate.

In short, there is ample support for the Court's decision to disallow fees based solely on the filing of inaccurate Section 329(a) compensation disclosure statements in this case.

ORDER- 16

**B.    The Fee Agreement and Counsel's Efforts to Collect Fees between Filing Fee Payments Violated the Court's Installment Fee Payment Order.**

Rule 1006(b) allows parties to apply to pay the court filing fee in installments if the debtor is unable to pay the full fee at the time of filing the bankruptcy petition. The Rule requires that "[a]ll installments of the filing fee must be paid in full before the debtor . . . may make further payment to an attorney or any other person who renders services to the debtor in connection with the case." Fed. R. Bankr. P. 1006(b)(3).

Upon Debtor's application and consistent with Rule 1006(b), on August 25, 2016, the Bankruptcy Court issued an Installment Fee Payment Order stating that "until the filing fee is paid in full, the debtor(s) shall not pay any money or transfer any property to his attorney and his attorney shall not accept any money or property from the Debtor(s) for services in connection with this case." (B. Dkt. 10.) The Installment Fee Payment Order required that Debtor pay the Court $135 on or before September 23, 2016 and $200.00 on or before October 23, 2016. (B. Dkt. 10.)

As of August 25, 2016, Debtor had paid her attorneys $500.00 for pre-petition services. While the Fee Agreement states that the total $2,000 flat fee includes the costs associated with the court filing fee, it is silent as to when these costs would be assessed against Debtor's account. Moreover, the Fee Agreement requires Debtor to make payments of $250.00 beginning three weeks after the bankruptcy filing and every four weeks thereafter. Because the Fee Agreement did not specify that the filing fee payment would have to be paid before Counsel could collect compensation, it violated Rule 1006(b) and the August 25, 2016 Fee Payment Order.

Moreover, in this case, Debtor failed to make any post-petition payments to Counsel. Consequently, between August 25, 2016 when the Installment Fee Payment Order was issued and December 16, 2016 when the second and final installment was received, Counsel contacted Debtor regularly in an effort to collect its fees. These efforts included written correspondence dated September 15, 17, 19, and 21, 2016 and October 18 and 25, 2016. (Dkt. 24.) Again, Counsel did not make clear that Debtor was obligated to pay the second installment fee payment before Counsel could be paid. Accordingly, these efforts also violated Rule 1006(b) and the August 25, 2016 Installment Fee Payment Order.

Ultimately, Counsel made the first installment fee payment of $200.00 from the initial $500.00 pre-petition fee payment from Debtor and Debtor paid the second installment payment of $135.00 herself on December 16, 2016. Thus, Counsel argues that the Bankruptcy Court erred in holding that it violated the Court's Installment Fee Payment Order because the Debtor failed to make any payment to Counsel after the initial $500.00 payment and Counsel collected its fee before the Installment Fee Payment Order was issued. (Dkt. 11, p. 28.) This argument misses the mark.

First, as discussed, the Fee Agreement itself as well as Counsel's collection efforts violated the letter and spirit of Rule 1006(b) and the August 26, 2016 Installment Fee Payment Order. Under the Fee Agreement, attorneys fee payments were due from Debtor and Counsel attempted to collect those fees from Debtor prior to payment of the final filing fee installment payment. Moreover, Counsel collected a fee from the $500.00 prepetition payment without prioritizing the Court's filing fee payment schedule.

ORDER- 18

Second, in evaluating the reasonableness of the fee charged under Section 329(b), the Court was well within its discretion to consider Counsel's efforts to prioritize its own compensation before payment of the filing fee. This is true even though the Debtor in this case ultimately paid the filing fee before paying Counsel any additional compensation. Counsel did not differentiate or prioritize the court filing fee payment from its own in violation of Rule 1006(b).

Third, there is another concern at issue here and it is related to the problems associated with the multiple, inaccurate disclosures regarding Counsel's compensation. If Counsel intended to use Debtor's initial $500.00 payment for prepetition services to pay the filing fee, as the September 7, 2016 disclosure would suggest, then Counsel: (1) should not have requested Bankruptcy Court permission to make installment fee payments for the filing fee and (2) should not have sent Debtor correspondence suggesting that her case would be dismissed for failure to pay the filing fee if she did not pay Counsel its next installment fee payment consistent with the Fee Agreement. Debtor's initial $500.00 payment to Counsel was sufficient to cover the filing fee.

### C.    *Counsel Failed to Provide Adequate Representation by Failing to Obtain or Maintain Original Signatures for Verified Court Filings.*

It is undisputed that Counsel did not obtain wet signatures from his client before filing certain verified pleadings. Instead, Counsel used a system that allowed Debtor to review and electronically sign documents before they were filed with the Court. The Local Bankruptcy Rules do not allow for this.

ORDER- 19

The Local Bankruptcy Rules require counsel in this district to obtain and retain "wet" signatures from their clients when filing a verified pleading, such as the debtor's petition and schedules. Local Bankruptcy Rule 5003.1 requires "[t]he original of all conventionally signed documents that are electronically filed be retained by the filing party for a period of not less than the maximum allowed to complete any appellate process, or the time the case of which the document is part, is closed, whichever is later." L.B.R. 5003.1(e). Further, "[t]he document shall be produced if ordered by the court" *Id.*

The Bankruptcy Court's electronic filing procedures allow attorneys, trustees, and other authorized individuals to register with the court and obtain system logins and passwords that permit them to file documents electronically, and to sign documents they file with a typed signature. However, the electronic filing of a verified pleading constitutes a representation by the filer that he has the original, signed document in his possession. ECF Procedures, p. 10. Further, the filer must electronically submit a scanned copy of the original signature page of these documents when they are filed. *Id.*

The case law in this district is clear: wet signatures are required for verified documents filed in Bankruptcy Court. *In re Daw*, No. 09-00690-TLM, 2011 WL 231362, at *3 (Bankr. D. Idaho Jan. 24, 2011); *see also In re Singh*, No. NC-13-1285-DjuKi, 2014 WL 842101 (B.A.P. 9th Cir. Feb. 20, 2014); *In re Nakhuda*, 544 B.R. 886, 903-904 (B.A.P. 9th Cir. 2016). Computer-generated signatures are not considered "original" signatures of a debtor in the bankruptcy context. *In re Mayfield*, 2016 WL 3958982, at *3 (Bankr. E.D. Cal. July 15, 2015) ("Although . . . software-generated electronic signatures may have a place in certain commercial and other transactions, they do not have a place as substitutes

ORDER- 20

for wet signatures on a bankruptcy petition, schedules, statements, and other documents filed with the court.").

Moreover, in bankruptcy proceedings, a client's signature, or signed verification of certain documents, is vitally important to the process:

> A debtor must sign a petition seeking bankruptcy relief. And all schedules, the statement of financial affairs, and other documents must be not only signed by the debtor, but that signature must follow the debtor's verification, made under penalty of perjury, that the paper to which it is affixed has been reviewed and is true and correct to the best of the debtor's knowledge, information, and belief. *See* Fed. R. Bankr.P. 1008 ("All petitions, lists, schedules, statements and amendments thereto shall be verified or contain an unsworn declaration as provided in 28 U.S.C. § 1746.").

*In re Daw*, 2011 WL 231362, *1.

Further, when an attorney submits an electronically signed document to the Court, the attorney "is certifying to the court that he has the [document] in his physical possession bearing the original signature of the [party]. If the certification is false, the attorney is subject to sanctions pursuant to Rule 9011." *In re Tran,* 427 B.R. 805, 808 (Bankr. N.D. Cal. 2010). The bankruptcy courts take this issue very seriously. As one court stated:

> [T]he integrity of the electronic filing system is at risk if attorneys are careless in their handling of originals. In addition, attorneys must treat the filing of electronic documents no differently than the court's prior system. At all times and for all documents filed with the court, an original signature is required. The same public policy that prevented an attorney from filing a document on a client's behalf without an original signature still exists in the era of electronic filing.

*In re Brown,* 328 B.R. 556, 559 (Bankr. N.D. Cal. 2005).

ORDER- 21

In this case, the Bankruptcy Court used Counsel's failure to obtain wet signatures as an additional justification for disallowing fees under Rule 329(b). (Dkt. 1-3, p. 37.) The Bankruptcy Court determined that Counsel's conduct "could merit Rule 9011 sanctions;" however, Counsel's failure also diminished the value of legal services Debtor received. (*Id.*) "[T]he value of a lawyer's services to a debtor is reduced to nothing, or next to nothing, if those efforts include advising the debtor to violate an order of the Court and a Local Rule." (*Id.* at p. 38.)

Counsel argues that the Bankruptcy Court erred in holding electronic signatures are not "original." (Dkt. 11, p. 35.) Counsel argues that there is no federal law, regulation, or statute that invalidates or denies the debtor's electronic signature is as an original.

Counsel's arguments ignore the fact that the local rules require wet signatures. By failing to obtain wet signatures, Counsel did not comply with the local rules. This is additional justification for the Bankruptcy Court's decision denying any and all compensation in this case.

### D.  *The Fee Agreement Coupled with Counsel's Debt Collection Efforts Constituted Over-Reaching, Threatened Impermissible Unbundling of Services, and Created a Conflict of Interest.*

The Fee Agreement in this case coupled with Counsel's heavy-handed approach to debt collection *while Debtor's bankruptcy petition was pending* violated the letter and spirit of applicable bankruptcy law. While collecting post-petition fees is not *per se* unlawful, Counsel's debt collection efforts in this case were.

ORDER- 22

(1)     *Attorney's Fees and the Bankruptcy Code in the Ninth Circuit*

Generally, filing a bankruptcy petition automatically stays "any act to collect, assess, or recover a claim against the debtor that arose before" the petition was filed. 11 U.S.C. § 362(a)(6). Further, in a chapter 7 liquidation, a debtor turns over all non-exempt assets to a trustee for distribution to creditors in return for a discharge of all debts that arose before the bankruptcy petition was filed. 11 U.S.C. §§ 704, 726, 727.

Certain debts are exempt from discharge as set forth in 11 U.S.C. § 523(a). Fees owed to an attorney are not specifically exempt from discharge.

As a result, there is a concern that an attorney who enters a fee agreement with a debtor-client before bankruptcy is filed runs the risk that the debt will be subject to the automatic stay and then discharged after bankruptcy. However, the Ninth Circuit has adopted a "doctrine of necessity" holding that "all claims for lawyers' compensation stemming from . . . pospetition services actually provided to the debtor really do not fall within the automatic stay provision of Section 362(a)(6) or the discharge provisions of Section 727." *In re Hines*, 147 F.3d 1185, 1191 (9th Cir. 1998).

The legal justification for this approach is that the attorney's "right to payment" cannot arise until the services are actually performed. *Id.* Accordingly, the right to payment for services rendered post-petition are not subject to the automatic stay and discharge provisions of the Code.

(2)     *Relevant Limits on Attorneys' Fees*

Nevertheless, there are limits to Counsel's ability to collect post-petition compensation. In the Ninth Circuit, "a *reasonable* fee for post-petition services is not a

dischargeable debt and *may* be collected in the course of bankruptcy without violating the automatic stay." *In re Sanchez*, 214 F.3d 1148, 1150-51 (9th Cir. 2001) (citing *In Re Hines*, 147 F.3d 1185, 1191 (9th Cir. 1998) (emphasis added). However, "the collection of a fee the debtor's attorney knows to be unreasonable does violate the automatic stay." *Id.*

Similarly, Counsel's position as both lawyer and creditor does not *ipso facto* create a conflict of interest rendering any agreement providing for post-petition payment of attorney fees. *Id.* at 1151 (holding "[a] deferred payment arrangement gives the attorney an undischarged claim to *reasonable compensation* for post-petition services"). However, "[a]n actual conflict of interest can justify a complete denial of compensation." *Id.* (citing *Woods v. Nat'l Bank & Trust Co.*, 312 U.S. 262, 268 (1941)).

In this case, the Fee Agreement coupled with Counsel's conduct in attempting to collect its fees mid-bankruptcy were problematic, because they: (1) were unreasonably harsh; (2) threatened to circumvent or limit Counsel's duties to provide fundamental and core legal services by withdrawing unilaterally in violation of *In Re Castaneda* and the local rules; and (3) created conflicts of interest between Debtor and Counsel.

(a)    *Counsel Treated Debtor Unreasonably.*

The Fee Agreement required Debtor to pay $500.00 pre-petition and the remaining $1,500.00 in $250.00 monthly installments by automatic transfer or debit. At the same time, Counsel prepared and filed schedules that show Debtor could not pay the $250.00 fee on a monthly basis. When that amount is added to her recurring monthly expenses, her expenses exceed her monthly income. (B. Dkt. 16.)

ORDER- 24

Further, under the Fee Agreement, Debtor agreed that Counsel could penalize her in the following ways for missing an attorneys fee payment: (1) apply a late fee of $100 per payment; (2) charge the entire balance due under the agreement; (3) charge a 36% interest rate on the unpaid balance; (4) bring a collection action against her; and (5) seek recovery for reasonable attorneys fees, costs, and expenses associated with enforcing the Fee Agreement. Moreover, in terms of the bankruptcy proceeding itself, Counsel threatened that, if Debtor missed a payment, Counsel might not pay her filing fee; her case could be dismissed without a discharge; and Counsel would seek court approval to withdraw from her representation.

Once Debtor missed her first payment under the Fee Agreement, Counsel shifted into collections mode. On September 17, 2016, less than a month after the petition was filed and while bankruptcy proceedings were pending, Counsel sent Debtor a letter stating that if Debtor did not bring her account current within 14 days, Counsel would withdraw from the case, refer the balance to collection, and seek a garnishment from Debtor. (Dkt. 31.) Worse still, Counsel stated that if it withdrew from the case, it could be dismissed and she would have to start over- even if a discharge had already been granted. *Id.*

The Debtor received these communications and believed that Counsel was "threatening to stop my bankruptcy and send me to collections." (Dkt. 24.) As she described:

> Bankruptcy is stressful enough and humiliating, then on top I have my lawyer threatening me with having my case dismissed and having to start all over with another attorney. My hair is falling out; I am a nervous wreck all the time and I don't know what to believe.

ORDER- 25

(*Id.*) Debtor asked the bankruptcy judge, "Can they have my case dismissed as they threatened? Am I going to find myself right back in collections?" (*Id.*)

Together, the Fee Agreement coupled with Counsel's correspondence to Debtor, go too far. Even Counsel had to admit at the hearing on this matter that he found his firm's collection tactics to be misleading and "personally offensive." (Dkt. 72, pp. 41-43.)

At a minimum, Counsel's conduct constitutes overreaching. Under the circumstances, the Bankruptcy Court could rely on these facts alone to order the disgorgement of the fee under the reasonableness standard of Section 329(b) or based on its inherent power to oversee the relationship between debtors and their counsel in all bankruptcy proceedings.

> (b)   *Counsel Threatened to Unbundle Its Legal Services.*

The Bankruptcy Court correctly concluded that the Fee Agreement, coupled with Counsel's repeated threats to withdraw if Debtor did not pay, threatened to unbundle legal services in violation of *In re Castoneda*. Further, it is contrary to Local Bankruptcy Rule 9010.1(g)(2) allowing an attorney to withdraw only upon notice and leave of court.

In Idaho,

> [a]n attorney, in accepting an engagement to represent a debtor in a bankruptcy case, will find it exceedingly difficult to show that he properly contracts away any of the fundamental and core obligations such an engagement necessarily imposes. Proving competent, intelligent, informed, and knowing consent of the debtor to waive or limit such services inherent to the engagement will be required.

*In re Castoneda*, 270 B.R. 504 (Bankr. D. Idaho 2001). Further,

ORDER- 26

> when accepting an engagement to represent a debtor in relation to a bankruptcy proceeding, an attorney must be prepared to assist that debtor through the normal, ordinary, and fundamental aspects of the process. These include the proper filing of all required schedules, statements and disclosures; preparation and filing of necessary amendments to the same; attendance at the § 341 meeting; turnover of assets to the trustee, and cooperation with the trustee; compliance with the tax turnover and other orders of the Court; performance of the duties imposed by §521(a)(1), (3) and (4); counseling in regard to §521(a)(2) and the reaffirmation, redemption, surrender or retention of consumer goods securing obligations to creditors, and assisting the debtor in accomplishing those aims; and responding to issues that arise in the basic milieu of the bankruptcy case, such as violations of stay and stay relief requests, objections to exemptions and avoidance of liens impairing exemptions, and the like.

*Id.* Once an attorney appears as counsel of record in a bankruptcy case, counsel may not "withdraw from representation without leave of the court, upon notice to the client, all parties in interest, and notice and hearing." L.B.R. 9010.1(g)(2).

In this case, Counsel threatened to withdraw immediately based on Debtor's failure to pay. The Bankruptcy Court found that such immediate withdrawal would have deprived Debtor of critical services required in the bankruptcy and is prohibited both by *In re Castoneda* as well as L.B.R. 9010.1(g)(2).

Counsel did not, in fact, withdraw from this case or otherwise limit the services necessary for Debtor to obtain a discharge. Nevertheless, Counsel threatened to do so contrary to existing bankruptcy law.

It is entirely reasonable for an attorney to enter a fee agreement with the goal of getting paid. It is also reasonable for an attorney to seek Court permission to withdraw from representation if the client is not paying for the services rendered. However, every

ORDER- 27

attorney of record appearing in court on behalf of a client has to be prepared to provide all legal services required as part of the representation unless and until the court allows counsel to withdraw from the representation. Further, an attorney cannot threaten a client with future conduct that is otherwise prohibited by the local rules.

Contrary to Counsel's hyperbolic arguments on appeal, requiring counsel to represent clients who refuse to pay for their services is not the same as involuntary servitude. It is basic professionalism.

If the client does not pay, the attorney can ask for permission to withdraw and later seek compensation based upon theories of breach of contract or *quantum meruit*. What the attorney cannot do is withdraw unilaterally or threaten to withdraw unilaterally in the midst of bankruptcy proceedings as Counsel did here.

(c)   *Counsel's Debt Collection Efforts Gave Rise to a Conflict of Interest*

In this case, the Fee Agreement, coupled with Counsel's debt collection efforts, created a conflict of interest between attorney and client. Counsel inappropriately created the false impression that Counsel could withdraw from representation at any time contrary to the Local Bankruptcy Rules. In addition, Counsel threatened to withdraw immediately if not paid and threatened that the case would be dismissed without a discharge if the Debtor did not pay Counsel. By relying upon these misimpressions while engaging in coercive debt collection procedures in the midst of the bankruptcy, Counsel pitted its own interests against that of its client creating a conflict of interest. Such a conflict is not tolerated in the fiduciary context and constitutes another valid justification for disallowance of any attorneys fee in this case.

ORDER- 28

3.      **Counsel Failed to Identify and Establish Value of Post-Petition Services.**

The Bankruptcy Court determined that Debtor could not enforce the Fee Agreement's pay provisions for post-petition services. Accordingly, the Bankruptcy Court reviewed Counsel's request for payment under a *quantum meruit* theory. (Dkt. 1-3, pp. 28-29.) The Bankruptcy Court determined that "Counsel offered insufficient evidence to identify and establish the value of the services it provided to Debtor after the filing of the bankruptcy." (Dkt. 1-3, p. 29.)

The Court agrees. The record is void of any contemporary time records or any effort from Counsel to identify: what services were provided to the Debtor, by whom, when, and how much time was devoted to providing legal services to Debtor in these bankruptcy proceedings.

In the Fee Agreement, Counsel attempts to define what constitute pre-petition and post-petition services. However, those definitions do not actually inform the Court as to when the services were, in fact, performed or by whom. Moreover, under *In re Hines*, Counsel's right to payment does not arise until the services are actually provided. Accordingly, if Counsel seeks payment for post-petition services based on a contract signed before the bankruptcy petition is filed, it would behoove Counsel to keep contemporaneous time records to reflect when the legal services were provided.

Counsel has made no effort to establish a record for the Court to make a finding as to a reasonable fee. Similarly, Counsel has not shown what costs were actually incurred on Debtor's behalf. Thus, Counsel has failed to identify and establish the value of legal services provided either pre-petition or post-petition in this case.

ORDER- 29

**CONCLUSION**

The Bankruptcy Court had discretion under 11 U.S.C. § 329(a) to order Counsel to cancel the Attorney Fee Agreement and order Counsel to disgorge all fees. This decision was supported by the evidence in the record. Furthermore, the penalty imposed was reasonable under the circumstances.

**ORDER**

NOW THEREFORE IT IS HEREBY ORDERED: the Bankruptcy Court's decisions (Dkts. 1-3, 1-4; B. Dkts. 58, 59) are **AFFIRMED**.

DATED: February 16, 2018

Edward J. Lodge
United States District Judge

ORDER- 30